COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KIM E. AYVAZIAN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947
AND
NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19980-3734

July 25, 2016

Matthew D'Emilio, Esquire
Thomas Uebler, Esquire
Mark Dalle Pazze, Esquire
Cooch & Taylor, P.A.
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801

Stephen E. Smith, Esquire
Baird Mandalas Brockstedt, LLC
6 South State Street
Dover, DE 19901

RE:     *William V. Ehrlich, Jr., Trustee of the William V. Ehrlich Trust U/W/D May 5, 1977, as Amended v. Jeffery Ehrlich and Vinn, LLC*, C.A. No. 11364-MA

Dear Counsel:

William V. Ehrlich, Jr. ("William, Jr."),[1] in his capacity as trustee of a testamentary trust ("the Trust"), has filed a petition seeking a declaratory judgment, indemnification, and specific performance against his younger brother Jeffrey Ehrlich ("Jeffrey"), who was the sole residuary beneficiary of the Trust. The dispute between the parties primarily involves an easement over real property

once owned by the Estate of William V. Ehrlich ("the Estate"), which easement had been conveyed to the J. Ehrlich Realty Company ("the Realty Company") by the co-executors of the Estate by deed dated September 1, 1982 ("the Easement Deed").[2]   The real property underlying the easement was then distributed to the Trust under the terms of the Last Will and Testament of William V. Ehrlich, deceased.[3]   On December 5, 2013, William, Jr., as trustee, distributed the last remaining parcel of real property in the Trust to Jeffrey free and clear of trust.[4]

---

[1] I use first names here to avoid repetition and confusion, and intend no disrespect by this practice.

[2] The co-executors of the Estate were William, Jr. and his father's widow, Audrey Ehrlich, who was Jeffrey's mother.  Shortly before William V. Ehrlich's death, he granted the Realty Company an option to purchase two parcels of land and an easement for $25,000.   Petition for Declaratory Judgment and Specific Performance ("Petition"), Exhibit B.  Both proposed parcels lacked street frontage and it appears from the rough sketch attached to the recorded option that the two parcels were to be carved out of the northern portion of Tax Map Lot Number 31 behind a two-story building that housed the Rehoboth Pharmacy in 1981.  The Realty Company exercised its option, and the deed dated September 1, 1982 describes Parcel No. 1 as containing approximately 1,630 square feet and Parcel No. 2 as containing approximately 84 square feet.   A 2013 survey shows Parcel No. 2 at the end of the alley between the former Rehoboth Pharmacy building and Parcel No. 1, which is improved by a small one-story masonry building. Petition, Exhibit J.  This survey also depicts the alley as running along the side and rear of the former Rehoboth Pharmacy building. *Id.*  When the option was granted in 1981, William, Jr. was president of the Realty Company and his father was its secretary.  Upon the death of William V. Ehrlich, William, Jr. inherited his father's shares in the Realty Company. *See* Respondents' Motion to Dismiss Pursuant to Chancery Court Rule 12(b)(2) and (6) in lieu of an Answer ("Motion to Dismiss"), Exhibit A.

[3] Motion to Dismiss, Exhibit A.

[4] Petition, Exhibit M.

According to the Petition, the Trust had been funded with two parcels of commercial property along Rehoboth Avenue in the Town of Rehoboth Beach, Delaware. These commercial properties generated revenue and Aubrey Ehrlich, the widow of William V. Ehrlich and a co-trustee of the Trust, was the beneficiary of the trust income. In 2006, Mrs. Ehrlich became incapacitated and William, Jr. thereafter served as the sole trustee of the Trust. In 2009, Mrs. Ehrlich's daughter and court-appointed guardian filed a petition to compel William, Jr., in his capacity of the sole trustee, to disgorge accumulated income to the guardian of the income beneficiary. The litigation settled after Mrs. Ehrlich's death in 2011, and the parties, including Jeffrey, executed a mutual release and settlement agreement on April 16, 2011.[5]

Thereafter, on June 2, 2011, William, Jr., in his capacity as trustee, conveyed one parcel, consisting of Tax Map Lot Number 33 and part of Tax Map Lot Number 35, ("117 Rehoboth Avenue") to Jeffrey free of trust.[6] William, Jr., in his capacity as trustee, did not file a trust accounting with this Court or obtain a title search prior to transferring 117 Rehoboth Avenue to Jeffrey.[7] Instead, Jeffrey

[5] Petition, Exhibits E & F. According to the Petition, Jeffrey was anxious to resolve the litigation because under the terms of the Trust, upon Mrs. Ehrlich's death, provided Jeffrey was over 21 years of age, Jeffrey was entitled to receive the commercial property outright and free of trust. Motion to Dismiss, Exhibit A.
[6] Petition, Exhibit G.
[7] Jeffrey subsequently conveyed 117 Rehoboth Avenue to Vinn, LLC. Petition, Exhibit I.

agreed to execute a "Waiver of Account, Receipt, Release and Indemnification Agreement," in which he waived, among other rights, his right to an account, and agreed to refund any property erroneously distributed to him by the Trust and to indemnify William, Jr. for all actions taken with respect to his administration of the Trust.[8]

On December 5, 2013, William, Jr., in his capacity as trustee, conveyed the remaining parcel, Tax Map Lot Number 31 ("107 Rehoboth Avenue") to Jeffrey free of trust. As recited in the deed, 107 Rehoboth Avenue is subject to a perpetual right of way for ingress and egress over an alley adjacent to and behind the two-story building located on Tax Map Lot Number 31, which building formerly was known as the Rehoboth Pharmacy.[9] Prior to making this final distribution, William, Jr., in his capacity as trustee, commissioned a survey of 107 Rehoboth

---

[8] Petition, Exhibit H.

[9] 117 Rehoboth Avenue is improved by a large one-story building that faces Rehoboth Avenue. 107 Rehoboth Avenue is improved by a two-story building that faces Rehoboth Avenue and an alley that separates this building from the building located on 117 Rehoboth Avenue. The alley turns and runs behind the two-story building until it terminates at the side of a large one-story building owned by the Realty Company. This building was formerly occupied by a MacDonald's restaurant. It faces Rehoboth Avenue and First Street, with an entrance on Rehoboth Avenue and a back door onto the alley. Behind 107 Rehoboth Avenue is the Realty Company's property. It is improved by a one-story masonry building sandwiched between the former MacDonald's building and the building on 117 Rehoboth Avenue. The only vehicular access to or from this property owned by the Realty Company is through the alley. Petition, Exhibit J.

Avenue so that a proper deed could be drafted.[10]  Upon reviewing the 2013 survey William, Jr. discovered that the boundary line between 117 Rehoboth Avenue and 107 Rehoboth Avenue did not run along the side of the building on 117 Rehoboth, but actually ran through the alley.  According to the 2013 survey, a portion of the alley (a 2.3 by 68.12 foot strip) lies on the 117 Rehoboth Avenue property.  William, Jr. asked Jeffrey to execute a confirmatory easement in order to clarify the Realty Company's easement on 117 Rehoboth Avenue and to provide notice to subsequent buyers.   No confirmatory easement was ever executed despite numerous attempts by the parties' attorneys to address this issue.  According to the Petition, William, Jr., in his capacity as trustee, made the final distribution of the Trust on December 5, 2013, conveying 107 Rehoboth Avenue to Jeffrey free and clear of trust with the belief and understanding that Jeffrey would address the easement issue after the property was distributed to him.  However, Jeffrey refused to engage in any discussions.

William, Jr.  is now seeking:  (1) a declaration that Jeffrey's real property (117 Rehoboth Avenue) remains subject to the easement; (2) the return of 117 Rehoboth Avenue to the Trust so that William, Jr., in his capacity as trustee, can distribute a corrected deed for that parcel reflecting the easement; (3) an order requiring Jeffrey to fully indemnify William, as trustee, in connection with this

---

[10] *Id.*

action; (4) enforcement of an alleged settlement agreement between the parties requiring Jeffrey to execute a confirmatory easement; and (5) an award of attorney's fees and costs.

Jeffrey has moved to dismiss the petition under Court of Chancery Rules 12(b)(2) and 12(b)(6), arguing that: (1) the trustee is bringing suit against the sole beneficiary of the Trust for the purpose of vindicating his own personal property right; (2) the Trust ceased to exist after December 5, 2013; and (3) even if the Trust still exists, "the idea of a trustee suing the sole beneficiary of a trust to regain trust property that the trustee himself distributed, is such a clear violation of the trustee's fiduciary duty as to render the suit unsustainable."[11]  In response, William, Jr. contends that the Trust continues to hold an asset, a chose in action, i.e., this claim against Respondents.  William, Jr. also accuses Jeffrey of unclean hands, claiming that Jeffrey reneged upon a previously-acknowledged obligation to correct the deed, which should preclude dismissal of this action.

After reviewing the record, I have concluded that the Trust lacks standing to enforce the claims asserted in this petition.  In order to have standing, a petitioner must have:

> (1) suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a casual connection between the injury and the conduct complained of – the injury has to be fairly

---

[11] Motion to Dismiss at ¶¶ 6-8.

traceable to the challenged action of the [respondent] and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[12]

The Trust has not suffered an injury in fact. Instead, it is the Realty Company, not the Trust, who has suffered an injury in fact. The Realty Company has a legally protected interest in a recorded easement over an alley located on 107 Rehoboth Avenue. Although the Easement Deed provided metes and bounds descriptions with starting points on the tax map lot lines for the Realty Company's two new parcels, it failed to provide a similar description or any dimensions for the Realty Company's easement over the alley.[13] According to the Petition, it was the understanding of William V. Ehrlich, the Estate, and the Realty Company in 1981 and 1982 that the side of the alley ran along the boundary line between 117 Rehoboth Avenue and 107 Rehoboth Avenue. The 2013 survey subsequently revealed that that the existing building on 117 Rehoboth Avenue does not extend to the boundary line between 117 Rehoboth Avenue and 107 Rehoboth Avenue – the

---

[12] *Vichi v. Koninklijke Philips Electronics N.V.*, 62 A.3d 26, 38 (Del. Ch. 2012) (quoting *Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110 (Del. 2003)).

[13] After describing the two new parcels, the Easement Deed recites the following:

TOGETHER with a right of way in perpetuity to Buyer, its Successors and Assigns, for pedestrian and vehicular ingress and egress to the structure on Parcels 1 and 2 herein from Rehoboth Avenue over, upon and across the aforesaid alley adjacent to the Rehoboth Pharmacy and over, upon and across the land behind the Rehoboth Pharmacy, but it is understood that the Fee Simple Title to the land

building ends slightly more than two feet short of the boundary line. As a result, a strip of the alley (2.3 by 68.12 foot) between the two buildings is owned by 117 Rehoboth Avenue. This creates a cloud on the Realty Company's title to the easement.[14] The Realty Company's injury is causally related to the Respondents' continuing refusal to execute a confirmatory easement deed for 117 Rehoboth Avenue.

The Trust is not the proper party to assert claims on behalf of the Realty Company. Nevertheless, Court of Chancery Rule 17 provides that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed for the substitution of such party.[15] Therefore, I recommend that the Court allow Petitioner 90 days from the date this report becomes final within which to comply with Rule 17 as to Counts I (declaratory judgment) and IV (enforcement of settlement agreement), and allow Respondents to renew their motion to dismiss at the expiration of 90 days if there has been no compliance. I also recommend that the Court dismiss Counts II (Breach of Contract – Specific Performance) and III (Indemnification) for failure

---

covered by the right of way will remain in Seller, his Heirs and Assigns, subject to this right of way." Petition, Exhibit C.

[14] A 2.3 foot wide strip of the building owned by the Realty Company on Parcel No. 1 also lies on 117 Rehoboth Avenue according to the 2013 survey, which creates a cloud on the Realty Company's title to that parcel. Because of the way the Easement Deed was drafted, the potential clouds on the Realty Company's title were always present, but they were only revealed in 2013 by the survey.

to state a claim under Rule 12(b)(6) because the Realty Company is not a party to the "Waiver of Account, Receipt, Release and Indemnification Agreement."

Both parties have filed exceptions to my draft report. After reviewing their respective briefs, I am dismissing the parties' exceptions and adopting my draft report as my final report as modified herein.

William, Jr., in his capacity as trustee of the Trust, has taken exception to my recommendation that the Court dismiss Counts II and III of the complaint for failure to state a claim under Court of Chancery Rule 12(b)(6) because the Realty Company was not a party to the Waiver of Account, Receipt, Release and Indemnification Agreement ("Release Agreement"). William, Jr. contends that the Trust has standing to pursue Counts II and III because when the Trust distributed 117 Rehoboth Avenue to Jeffery,[16] the easement over the alley should have been, but was not, expressly excepted from the 2011 deed conveying this real estate. As a result, according to William, Jr., Jeffery had received more property than he was entitled to. Furthermore, under the Release Agreement, Jeffery had agreed "to refund to [William, Jr.] any amount which may at any time be determined to have been an erroneous distribution to him regardless of the cause of such erroneous

---

[15] *See* Court of Chancery Rule 17(a).
[16] I had misspelled Jeffery's name throughout my draft report and now am using the correct spelling in my final report.

distribution ….”[17] In addition, Jeffery had agreed to indemnify William, Jr. against any “causes of action, costs and expenses … which may arise from his administration of the Trust, including … William’s distribution of the assets to Jeff[ery] in accordance with this Agreement.”[18]

The problem with William, Jr.’s argument is two-fold. First, Jeffery received the property to which he was entitled under the Trust: 117 Rehoboth Avenue and 107 Rehoboth Avenue. After distributing 117 Rehoboth Avenue to Jeffery, William, Jr. commissioned a survey of 107 Rehoboth Avenue and discovered that a portion of the easement that had been granted to the Realty Company in 1982 was located on 117 Rehoboth Avenue, creating a cloud on the Realty Company’s title. The Trust lacks standing to enforce the Release Agreement because the Trust was not injured by this distribution, only the Realty Company. The relief requested in Count II (“order Jeffery to return the 117 Rehoboth Property to the Trust so that William, as trustee, can distribute a corrected deed for the property reflecting the easement”), if granted, would not protect or benefit the Trust; instead, it would *burden* Trust property with an easement before distributing that property free and clear of trust to Jeffery. Second, the requested relief would *benefit* the Realty Company, as the only entity having a legally protected interest in the recorded easement. The Realty Company

---

[17] Petition for Declaratory Judgment and Specific Performance, Ex. H, at ¶ 13.

was not a party to the Release Agreement. Moreover, on the limited record before me, William, Jr. is the president of the Realty Company.[19] Under the Release Agreement, Jeffery agreed to indemnify William, Jr. "in his personal capacity and as trustee," but not in his capacity as president of the Realty Company. Therefore, Counts II and III should be dismissed for failure to state a claim for relief.

Although William, Jr. does not take exception to my draft report's recommendations that (a) the Realty Company should prosecute Count I (to resolve the cloud on the title to the easement by declaratory judgment), and (b) the Realty Company should prosecute Count IV (to enforce an alleged settlement agreement), William, Jr. does takes exception to my conclusion that only the Realty Company has standing to prosecute Count IV; he argues that the Trust has a right to enforce the settlement agreement as well. Conversely, in their exception to my draft report, Respondents Jeffery and Vinn, LLC argue that if Counts II and III are dismissed for failure to state a claim because the Realty Company was not a party to the Release Agreement, then the Court also should dismiss Count IV under Rule 12(b)(6) because the Realty Company was not a party to the alleged settlement agreement.

Count IV is based on allegations that after the 2013 survey revealed the property line discrepancy, William, Jr. had requested Jeffery "execute a

---

[18] *Id.* at ¶ 7.

confirmatory easement to make [the Realty Company's] easement on the 117 Rehoboth Property clear and provide notice to subsequent buyers."[20] William, Jr. further alleges that Jeffery, through his counsel, Neil F. Dignon, Esq., had agreed to "remedy the mutual mistake by executing a confirmatory easement."[21] By August 2013, however, Jeffery refused to honor the agreement; therefore, William, Jr. is seeking specific enforcement of the settlement agreement and an order compelling Jeffery to execute the confirmatory easement.

Respondents argue that in March 2013, William's attorney was representing the Trust, not the Realty Company. Any settlement agreement, therefore, existed between the Trust and Jeffery. Respondents argue that because the Trust terminated after the property was distributed and because the Realty Company is not the appropriate entity to enforce the alleged agreement, Count IV should be dismissed entirely.

In my draft report, I concluded that the Realty Company is the real party in interest in this case. If it can be demonstrated that the Realty Company was a third-party beneficiary of the alleged settlement agreement,[22] then the Realty

---

[19] *Id.* Ex. B.
[20] *Id.* at ¶ 31.
[21] *Id.* at ¶ 32 & Ex. K.
[22] *See Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337, at *3 (Del. Ch. Feb. 17, 2004) ("To qualify as a third party beneficiary of a contract, (i) the contracting parties must have intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a

Company would have standing to prosecute Count IV, which seeks specific enforcement of the alleged settlement agreement.[23] If, on the other hand, the Trust were to prosecute Count IV, William, Jr.'s conflicting roles as trustee of the Trust and president of the Realty Company would raise the specter of self-dealing and breach of fiduciary duty.

In my draft report, I recommended that the Court allow William, Jr. 90 days to comply with Rule 17, which provides that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed for the substitution of such party. At this stage, it would be premature to dismiss Count IV because the Realty Company may have standing to prosecute it. Furthermore, since William, Jr. has not taken exception to my recommendation that the Realty Company be allowed to substitute for the Trust in prosecuting Count I, Count IV ultimately may be rendered moot if the Realty Company obtains an order declaring that 117 Rehoboth Avenue remains subject to the easement that was established approximately 34 years ago.

Respondents also have taken exception to my failure to award them attorneys' fees. It is premature at this stage of the proceeding to consider an

---

pre-existing obligation to that person, and (iii) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract.") (quoting *Madison Realty Partners 7, LLC v. AG ISA, LLC*, 2001 WL 406268, at *5 (Del. Ch. Apr. 17, 2001)).

[23] *See Astle v. Wenke*, 297 A.2d 45, 47 (Del. 1972).

application for attorneys' fees. As a result, I am dismissing Respondents' exceptions to my draft report and William, Jr.'s exceptions to my draft report. The parties are referred to Rule 144 for the process of taking exception to a Master's Final Report.

Respectfully,

/s/ Kim E. Ayvazian

Kim E. Ayvazian
Master in Chancery

KEA/kekz